**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

OCT 11 2017

JAMES W. McCORMACK, CLERK
By: _____ 
                                    DEP CLERK

MICHAEL REICHERT,

        Plaintiff,

vs.

BEAR STATE FINANCIAL, INC., SCOTT
T. FORD, RICHARD N. MASSEY, W.
DABBS CAVIN, WILLIAM CHANGOSE,
J. MATTHEW MACHEN, FRANK L.
CONNER, DANIEL C. HORTON, IAN R.
VAUGHAN, OMON FITZGERALD HILL,
K. AARON CLARK, G. BROCK
GEARHART, and JOHN J. GHIRARDELLI

        Defendants.

Case No.: 4:17-cv-654- SWW

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

This case assigned to District Judge *Wright*
and to Magistrate Judge *Kearney*

**COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE**
**SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Michael Reichert ("Plaintiff") brings this suit for violations of Sections 14(a) and

20(a) of the Securities Exchange Act Of 1934. In support of this complaint, Plaintiff, by his

attorneys, alleges upon information and belief, except for his own acts, which are alleged on

knowledge, as follows:

**INTRODUCTION**

1.      Plaintiff, a stockholder of Bear State Financial, Inc. ("Bear State" or the

"Company"), brings this action against Bear State and the Company's Board of Directors (the

"Board" or the "Individual Defendants," as further defined below), for violations of Sections 14(a)

and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 14a-9

promulgated thereunder ("Rule 14a-9"). The Company and the Individual Defendants are referred

to herein as "Defendants."

2.      Specifically, defendants seek stockholder votes in connection with the sale of the

Company to Arvest Bank ("Arvest"), through a proxy statement that omits material facts necessary

to make the statements therein not false or misleading. Stockholders require this material information to make an informed vote

3.    On August 22, 2017, the Company announced that it had entered into an agreement and plan of reorganization (the "Merger Agreement"), dated August 22, 2017, by which Arvest, through its wholly owned subsidiary Arvest Acquisition Sub, Inc., ("Merger Sub") will acquire all of the outstanding shares of Bear State in an all-cash transaction (the "Proposed Transaction"). If consummated, Bear State stockholders will receive $10.28 in cash for each share of Bear State stock that they own ("Merger Consideration"). The Proposed Transaction was valued at approximately $391 million at the time of the announcement.

4.    On October 5, 2017, defendants issued materially incomplete and misleading disclosures in the Schedule 14A Information Statement (the "Proxy Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The stockholder vote on the Proposed Transaction is currently scheduled to take place on November 15, 2017.

5.    Specifically, the Proxy Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the valuation analyses of the Company's financial advisor, Raymond James & Associates, Inc. ("Raymond James"), and omits material information with respect to the process and events leading up to the Proposed Transaction, including material information concerning the relationship between Bear State, Arvest, and a bank consulting firm, DD&F Consulting Group, Inc., ("DD&F"). The failure to adequately disclose such material information constitutes a violation of §§ 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to make a fully-informed vote on the Proposed Transaction.

2

6.      By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy Statement, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy Statement is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

7.      For these reasons and as set forth in detail herein, the Individual Defendants, and the Company, have violated federal securities laws.  Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder

9.      The Court has personal jurisdiction over each of the Individual Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Bear State is headquartered in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained

3

of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

11.     Plaintiff is, and has been at all relevant times, the owner of shares of Bear State common stock.

12.     Defendant Richard N. Massey ("Massey") is Chairman of the Board of Directors of the Company and previously served as its interim President and Chief Executive Officer. He has been a director of the Company since 2011.

13.     Defendant J. Matthew Machen ("Machen") is President and Chief Executive Officer of the Company. He has been a director of the Company since 2017.

14.     Defendant W. Dabbs Cavin ("Cavin") is Vice Chairman of the Board of Directors of the Company. He has served as a director of the Company since 2011.

15.     Defendant Scott T. Ford ("Ford") has been a director of the Company since 2011.

16.     Defendant William Changose ("Changose") has been a director of the Company since 2017.

17.     Defendant Frank L. Conner ("Conner") has been a director of the Company since 2003.

18.     Defendant Daniel C. Horton ("Horton") has been a director of the Company since 2014.

19.     Defendant Ian R. Vaughan ("Vaughan") has served as a director of the Company since 2014.

4

20.     Defendant Omon Fitzgerald Hill ("Hill") has been a director of the Company since 2011.

21.     Defendant K. Aaron Clark ("Clark") has been a director of the Company since 2011.

22.     Defendant G. Brock Gearhart ("Gearhart") has been a director of the Company since 2012.

23.     Defendant John J. Ghirardelli ("Ghirardelli") has been a director of the Company since 2011.

24.     Defendants Ford, Massey, Cavin, Changose, Machen, Conner, Horton, Vaughan, Hill, Clark, Gearhart, and Ghirardelli are collectively referred to as "Individual Defendants" and/or the "Board."

25.     Defendant Bear State is an Arkansas corporation and the holding company for Bear State Bank, an Arkansas state-chartered bank. As of June 30, 2017, Bear State had consolidated assets of $2.24 billion, total loans of $1.66 billion, deposits of $1.70 billion and stockholders' equity of $244.5 million. Bear State is publicly traded on the NASDAQ under the symbol "BSF."

26.     The Individual Defendants and Bear State are collectively referred to as "Defendants."

## OTHER RELEVANT ENTITIES

27.     Arvest is an Arkansas state-chartered bank legally located in Fayetteville, Arkansas. As of August 31, 2017, Arvest operated 254 branches in Arkansas, Kansas, Missouri and Oklahoma. The company's principle offices are located at 110 NW 2nd Street, Suite 300 Bentonville, Arkansas 72712.

28.     Merger Sub, is an Arkansas corporation, and a wholly-owned subsidiary of Arvest. It was formed solely for the purpose of effecting the merger and the transactions contemplated by the merger agreement and it has not engaged in any other business.

## FURTHER SUBSTANTIVE ALLEGATIONS

**Company Background and the Merger Process**

29.     Bear State is a $2.24 billion asset bank holding company, whose primary subsidiary, Bear State Bank, operates 42 branches, three personalized technology centers equipped with interactive teller machines, and three loan production offices, located throughout Arkansas, Southwest Missouri and Southeast Oklahoma.

30.     In March 2017, Massey, was approached by Randy Dennis ("Dennis") of DD&F Consulting Group, Inc., ("DD&F") a bank consulting firm based in Little Rock, Arkansas, regarding the possibility that Bear State could be an attractive and transformative acquisition candidate for Arvest.

31.     Acting on the direction of Massey, on March 13, 2017, Dennis spoke with the Chairman of the board of directors of Arvest, about a potential transaction between Arvest and Bear State.

32.     Three months later, following several months of intermittent communication and the preliminary exchange of certain information, Arvest's Chairman and Rick Chapman, vice president of Arvest's parent holding companies Arvest Bank Group, Inc. and Arvest Holdings, Inc., agreed to a meeting with Massey and Dennis. During the meeting, which took place on June 13, 2017, Arvest representatives expressed a desire to acquire Bear State in an all-cash transaction. Also during this meeting, Massey informed the Arvest representatives that if the Bear State board desired to pursue a transaction with Arvest, the directors' fiduciary duties would require them to

take measures to maximize the value to be paid to shareholders, which would most likely mean actively soliciting competing bids from third parties.

33.    One week later, on June 22, 2017, Chapman contacted Massey and proposed a transaction, pursuant to which Arvest would acquire Bear State in an all-cash transaction valued at $10.53 per share (the "Initial Proposal").

34.    The Initial Proposal was presented to the Board during a June 26, 2017 special meeting. Following a thorough review of the Company's performance, future growth prospects, and overall strategic direction, as well as developments in the industry, the Board discussed Arvest's proposal and the potential interest of other persons in acquiring Bear State. Following this discussion, the Board authorized Massey and senior management to continue discussions with Arvest on a non-exclusive basis, to enter into a confidentiality agreement with Arvest and to allow Arvest to conduct a due diligence review of Bear State, and to formally engage DD&F as a consultant in order to perform a market check to determine if any other acquirers for Bear State might emerge. Additionally, the Board determined that a special transaction committee was unnecessary in this instance because (1) Massey, who was sufficiently independent of senior management, would lead the negotiations with Arvest on behalf of Bear State and would oversee the market check process, (2) the board as a whole was sufficiently independent of management, with Matt Machen, President and Chief Executive Officer of Bear State, being the only member of senior management serving on the board and (3) with the exception of Machen, none of the directors had any material special interest in a transaction other than as a shareholder of Bear State.

35.    That same day, Bear State and Arvest entered into a confidentiality agreement.

36.    During the month of July, representatives of DD&F engaged in discussions with six financial institutions, which were determined by Dennis and DD&F to be most likely to have

the interest and ability to consummate a transaction with Bear State, regarding a potential transaction with Bear State. This market check, which was initiated on July 5, 2017, required that any expression of interest in a potential business combination transaction with Bear State be submitted by July 21, 2017. Of the six entities contacted, only one ("Company A") elected to submit a written expression of interest. Company A's proposal contemplated a stock-for-stock transaction and required Bear State to immediately grant Company A exclusive negotiating rights while Company A conducted a due diligence review of Bear State. Additionally, Company A's proposal expressed a desire to enter into a definitive agreement during the fourth quarter of 2017 with a targeted closing to occur no earlier than the first quarter of 2018.

37.     While this market check was on-going, Arvest's representatives submitted a working draft of the merger agreement that included, among other things, provisions for certain shareholders to enter into voting agreements to support the transaction; a condition that certain key persons enter into a restrictive covenant agreement with Arvest; a non-solicitation provision that would prevent Bear State from discussing or negotiating any third party proposals, subject to certain exceptions; a "force the vote" provision pursuant to which Bear State would be obligated to hold a shareholders' meeting to consider the transaction even if the Bear State board changed its recommendation in favor of the transaction; a provision that would prevent the Bear State board from submitting any third party proposal to a vote of the Bear State shareholders; and a termination fee payable by Bear State in certain circumstances in the amount of $14 million, which represented approximately 3.5% of the equity value of the proposed transaction.

38.     With only two proposals to consider, on July 26, 2017, Bear State's Board met to review the respective proposals of the two entities. After discussing the strengths and weaknesses of both Arvest's proposal and Company A's proposal, the Board determined that the Arvest

8

proposal constituted a superior proposal, but directed Dennis to continue discussions with Company A to determine if Company A was willing to modify its proposal to make it more attractive to Bear State's shareholders. The Board also directed Massey to retain Raymond James as the Company's financial advisor.

39.     Over the next several day, Dennis communicated with representatives of Company A regarding the Board's concerns. Although Company A was amenable to adding some cash consideration, it would not guarantee board representation to Bear State shareholders, and was unwilling to accelerate the merger timeline that it had previously proposed.

40.     While Dennis held discussions with representatives of Company A, Arvest, together with its legal advisers, continued its business, legal and financial due diligence of Bear State and the parties continued to negotiate a definitive merger agreement. On August 7, 2017, Arvest delivered a revised draft of the merger agreement to Bear State, that reflected continued negotiation of the representations and warranties, pre-closing operating covenants and closing conditions as well as the addition of a provision that Bear State would not submit a third party proposal to a vote of the Bear State shareholders prior to submission of the Arvest proposal to a vote of the Bear State shareholders. Furthermore, Arvest's revised draft included a condition that Bear State's closing date shareholders' equity value would not be less than its shareholders' equity value on June 30, 2017.

41.     The status of these negotiations were presented to the Board on August 11, 2017 during a joint special meeting of the board of directors of each of Bear State and Bear State Bank. During this meeting, Massey notified the board that Arvest had signaled that a potential price reduction in the Arvest proposal was forthcoming. Despite the possibility of a decreased merger consideration, the Board reconfirmed its view that the Arvest proposal was superior to the

Company A proposal as (i) it provided superior value to the Bear State shareholders, (ii) it provided a shorter time period for signing and closing and thus a definitive agreement was much more likely, (iii) it would not expose the transaction value to the economic risk of the acquirer's stock price and (iv) it did not require Bear State to cease discussions with other parties.

42.    One week later, following the conclusion of Arvest's due diligence review, Arvest informed Bear State that based on the magnitude and quantity of all charges and expenses expected to be incurred in connection with the transaction Arvest was reducing its proposal to $10.28 per share (the "Reduced Proposal").

43.    The Reduced Proposal was presented to the Board during an August 21, 2017 special meeting of the board of directors of each of Bear State and Bear State Bank. During this meeting, a representative of Raymond James presented to the Board Raymond James' financial analysis of the $10.28 per share cash consideration to be offered to Bear State's stockholders in the proposed merger, responded to questions from members of the Board regarding its financial analysis, and proceeded to deliver Raymond James' oral opinion to the Board, subsequently confirmed by delivery of a written opinion, that the $10.28 in cash per share merger consideration to be received by the holders of Panera's common stock was fair, from a financial point of view, to such holders. Following this review, the Board concluded that even with the decreased price, the Arvest proposal remained superior to the Company A proposal, which then reflected a $9.75 per share value based on the then current trading price of Company A common stock. Following these discussions, the Board unanimously resolved that the merger agreement be submitted for consideration by the stockholders of the Company at a special meeting of stockholders, and recommended that the stockholders of the Company vote to adopt the merger agreement.

44.     The following day, prior to the commencement of trading, Bear State and Arvest

entered into the merger agreement and Bear State issued a press release announcing the transaction.

**The Merger Announcement**

45.     In a press release dated August 22, 2017, Bear State issued a press release

announcing the transaction.

46.     The press release states in pertinent part:

**FAYETTEVILLE, AR and LITTLE ROCK, AR** – August 22, 2017 – Bear
State Financial, Inc. ("Bear State") (NASDAQ:BSF), parent company of Bear State
Bank, and Arvest Bank jointly announced today the signing of a definitive
agreement for Arvest Bank to acquire Bear State in an all-cash transaction valued
at approximately $391 million, or $10.28 per share of Bear State common stock.

The agreement and plan of reorganization was unanimously approved by the boards
of directors of each company. The transaction is expected to close in the fourth
quarter of 2017 or first quarter of 2018 and is subject to customary conditions,
including both regulatory approval and approval by Bear State's shareholders.

Clients of Bear State Bank and Arvest Bank will not notice any immediate changes,
and both banks will continue to conduct business as usual. At a later date, Bear
State Bank's branding will change to Arvest Bank, with the full conversion of
systems expected to occur in 2018.

DD&F Consulting, Inc. served as a consultant to Bear State and Raymond James
& Associates, Inc. provided a fairness opinion. Kutak Rock LLP provided legal
counsel to Bear State and Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd. and
McAfee & Taft PC provided legal counsel to Arvest.

47.     As noted in both the press release and Merger Agreement, Bear State's stockholders

will have the right to receive, in exchange for each share of Bear State common stock, $10.28 per

share in cash.

**The Proxy Statement Misleads Stockholders By Omitting Material Information**

48.     On October 5, 2017, Bear State filed its definitive Proxy Statement with the SEC.

As alleged below and elsewhere herein, the Proxy Statement contains material misrepresentations

and omissions of fact that must be cured to allow Bear State's stockholders to render an informed decision with respect to the Proposed Transaction.

49.     As discussed below, the Proxy Statements omits material information regarding: (i) conflicts of interest surrounding DD&F; (ii) Bear State's Prospective Financial Information; and (iii) the Valuation Analyses Prepared by Raymond James. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Bear State's stockholders.

***Material Omissions Concerning DD&F's Conflicts of Interest***

50.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by DD&F as a consultant to assist in the performance of a market check and to provide other consulting services in connection with a potential transaction.

51.     As a result of the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, full disclosure of investment banker compensation and all potential conflicts is necessary for stockholders to have a materially complete sense of the conflicts of interests operating in the background. While DD&F identifies as a consulting group, their role in this Proposed Transaction mimics the work typically undertaken by investment banks. The Proxy Statement details that in early March 2017, DD&F approached Massey noting that Bear State could be an attractive and transformative acquisition candidate for Arvest, and asked for Massey's permission to approach Arvest and inquire as to their interest in a potential strategic transaction. Over the next three months, DD&F facilitated discussions between Arvest and Bear State, and prepared materials relating to the Proposed Transaction. On June 26, 2017, the Board formally engaged DD&F as a consultant to assist in the performance of a market

check and to provide other consulting services in connection with a potential transaction. Following its engagement, DD&F assisted in the development of a market check process and the compilation of a list of six potential acquirers whose interest in a potential transaction would be solicited. Beginning on July 5, 2017, representatives of DD&F engaged in discussions with each of the six financial institutions about a potential transaction with Bear State.

52.     As explained herein DD&F played an outsized role in exploration, selection, and implementation of this merger, however, the Proxy Statement fails to detail the compensation DD&F will receive in connection with the Proposed Transaction. Furthermore, the Proxy Statement fails to detail the full scope of any services that DD&F has provided to Bear State or Arvest in the past two years, nor does it provide any details regarding any prior compensation paid to DD&F by either Bear State or Arvest over the past two years. Accordingly, Bear State stockholder are unable to evaluate whether potential conflicts of interest exist.

53.     The omission of this information renders certain portions of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; and (ii) "Reasons for the Merger; Recommendation of the Board of Directors."

*Material Omissions Concerning Bear State's Prospective Financial Information*

54.     The Proxy Statement also fails to disclose critical information concerning the financial projections for the Company that were relied upon by the Board and the Company's financial advisors in recommending the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Bear State's stockholders that they would rely upon in deciding how to vote on the Proposed Transaction.

55.     Here the Proxy Statement provides projected values for Tangible Common Equity, a non-GAAP accounting metric, for projected financial information over the years 2017-2022. However, the Proxy Statement fails to describe the various adjustments that were made to this non-GAAP measures and how it was calculated, fails to disclose the line item projections for the calculations, and fails to reconcile this non-GAAP projections to the most comparable GAAP measure.

56.     Providing this non-GAAP metrics without disclosing the line item metrics used to calculate it, or otherwise reconciling the non-GAAP projection to GAAP measures, makes the provided disclosures materially incomplete and misleading. Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance. Rather than disclose the information necessary to reconcile these measures, Defendants chose to omit this information.

57.     Consequently, the Proxy Statement provides Bear State stockholders a non-GAAP financial projection that make it extremely difficult for stockholders to assess the fairness of the Proposed Transaction. This is particularly problematic for Bear State stockholders. Because of the non-standardized and potentially manipulative nature of non-GAAP measures, the SEC requires the disclosure of certain information in solicitation materials. Thus, when a company discloses information in a Proxy Statement that includes non-GAAP financial measures, as is the case here, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100. Item 10(e)(1)(i)(B) of SEC Regulation S-K further states that, with regard to forward-looking information such as financial projections, any reconciling metrics that are available without unreasonable efforts must be disclosed. 17 C.F.R. 229.10(e)(1)(i)(B).  Furthermore, as noted below, Tangible Common Equity was

disproportionately relied upon by Raymond James in the preparation of their opinion. Consequently, without disclosure of these reconciling metrics, the Proxy Statement violates SEC regulations and materially misleads Bear State stockholders.

58.     The omission of this information renders certain portions of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act including, inter alia, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Merger; Recommendation of the Board of Directors"; and (iii) "Opinion of Raymond James & Associates, Inc"; and (iv) Certain Unaudited Bear State Forecasts."

***Material Omissions Concerning the Valuation Analyses Prepared by Raymond James***

59.     The Proxy Statement also fails to disclose critical information concerning Bear State's managements' projections, as utilized by Raymond James in its financial analyses, and the opinions and analysis of Raymond James, on which the Board purportedly relied. This omitted information, if disclosed, would significantly alter the total mix of information available to Bear State's stockholders that they would rely upon in deciding how to vote on the Proposed Transaction.

60.     Specifically, with regard to *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples for each of the selected public companies analyzed by Raymond James, as well as the financial performance metrics for each selected company.

61.     Furthermore, with regard to *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples for each of the selected transactions analyzed by Raymond James, as well as any benchmarking analyses Raymond James performed for Bear State in relation to the target companies. This information is material in light of the fact that the

15

results of the analysis show that the merger consideration of $10.28 per share was below the 25th percentile of the implied transaction metrics for the trailing twelve months EPS and next twelve months forecasted EPS of both the regional and national selected transactions.

62.     Finally, in connection with Raymond James' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) projected free cash flows for the years ending December 31, 2017 through December 31, 2022 on a stand-alone basis, as provided by Bear State's management; (ii) Raymond James' basis for using tangible common equity in excess of a target ratio of 8.0% at the end of each projection period for free cash flow; (iii) the inputs used to derive the range of discount rates of 11.5% to 13.5%; (iv) Raymond James' basis for applying multiples ranging from 12.0x to 18.0x; and (iv) the calculated terminal values for Bear State.

63.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Bear State's stockholders. Accordingly, based on the foregoing disclosure deficiencies in the Proxy Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will suffer, absent judicial intervention, if Bear State's stockholders are required to vote on the Proposed Transaction without the above-referenced material misstatements and omissions being remedied.

64.     The omission of this information renders certain portions of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Merger; Recommendation of the Board of Directors"; and (iii) "Opinion of Raymond James & Associates, Inc."

## CLAIMS FOR RELIEF

### COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

65.     Plaintiff repeats and realleges each allegation set forth herein.

66.     As detailed herein, Defendants disseminated the false and misleading Proxy Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

67.     By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of Bear State.

68.     By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by Defendants. The Proxy Statement misrepresented and omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets. Defendants were at least negligent in filing and disseminating the Proxy Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Proxy Statement and the failure to update

17

and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

69.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

70.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

<u>COUNT II</u>
**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

71.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72.     The Individual Defendants acted as controlling persons of Bear State within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of Bear State and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be false and misleading

prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

74.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

75.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

76.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring that the Proxy Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(B)     preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants

disclose the material information identified above which has been omitted from the Proxy;

(C)     to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(D)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(E)     granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  October 11, 2017

**EMERSON SCOTT, LLP**

David G. Scott, AR Bar No. 2006030
1301 Scott Street
Little Rock, AR 72202
Telephone: (501) 907-2555
Facsimile: (501) 907-2556
Email: dscott@emersonfirm.com

**EMERSON SCOTT, LLP**
John G. Emerson, AR Bar No. 2008012
830 Apollo Lane
Houston, TX 77058
Telephone: (281) 488-8854
Facsimile: (281) 488-8867
Email: jemerson@emersonfirm.com

**LEVI & KORSINSKY LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: denright@zlk.com
          etripodi@zlk.com